J-S76014-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ORLANDO CURRY SMITH, JR., | |
| Appellant | No. 384 WDA 2018 |

Appeal from the Judgment of Sentence Entered February 1, 2018
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0014035-2016

BEFORE:  BENDER, P.J.E., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY BENDER, P.J.E.:               FILED MARCH 04, 2019

Appellant, Orlando Curry Smith, Jr., appeals from the judgment of sentence of an aggregate term of forty to eighty-four months' incarceration, imposed after a jury convicted him of unlawful contact with a minor, 18 Pa.C.S. § 6318(a)(1), and indecent assault–person less than 16 years of age, 18 Pa.C.S. § 3126(a)(8).  We affirm.

The trial court summarized the procedural history and factual background of this case as follows:

> On November 8, 2017, a jury convicted Appellant … of one count each of [u]nlawful [c]ontact with [m]inor and [i]ndecent [a]ssault-[p]erson [l]ess than 16 [y]ears of [a]ge.  This [c]ourt sentenced Appellant on February 1, 2018[,] to forty to eighty-four months of incarceration.  Appellant filed a [p]ost-[s]entence [m]otion[,] which this [c]ourt denied on February 12, 2018. Appellant filed a [n]otice of [a]ppeal on March 14, 2018[,] and a [s]tatement of [m]atters [c]omplained of on May 3, 2018.

* * *

S.R., the victim in this case, testified at trial that she was fourteen years old, and in the spring of 2016[,] she lived in Troy Hill with her mom, and her siblings. Appellant, who was her mother's boyfriend, was also often in the home. S.R. testified that Appellant touched her inappropriately more than one time. The first time Appellant touched her[,] she was washing dishes while standing at the kitchen sink. S.R. testified that Appellant entered the room, "grabbed" and "squeezed" her "butt" with his hand over her clothes. Appellant asked her if she was uncomfortable and she said that she was uncomfortable with it. Appellant squeezed her arm [and] whispered in her ear to keep it a secret.

The second instance occurred two days later. S.R. testified that she was at the kitchen table[,] pouring drinks for her siblings[,] when Appellant came into the kitchen and touched her vagina over her clothes with his whole hand, which made her feel "very uncomfortable." S.R. set down all of the drinks and went upstairs crying. She told her 10-year-old sister, R.M., what had happened but told R.M. not to tell anyone because she did not know how their mother would respond.

The third and final incident to which S.R. testified occurred on the staircase in her home. Appellant blocked her path, said something that she could not remember, and grabbed her butt with his hand as he had previously. S.R. told her older sister M.F., and M.F. told their mother what Appellant had done to S.R. An intense argument ensued in which the police were called and the children eventually left the residence. S.R. testified that she saw Appellant from her mother's window. From that vantage point, she observed Appellant pull out a gun and point it at "Jaden," a prior paramour of S.R.'s mother. S.R. testified that once police came, Appellant "ran." S.R. identified Appellant in court as the person who had touched her inappropriately.

R.M. testified that S.R., her sister, told her that Appellant touched her butt two times. S.R. asked R.M. not to tell anyone and she did not. Next, M.F. the older sister of S.R., testified that S.R. disclosed to her while they were walking home together that Appellant had touched her inappropriately. M.F. told her mother, and an argument broke out that escalated rapidly, to the extent that she felt that her safety was compromised.

Pittsburgh Police Detective Bryan Sellers testified that [he] was unable to locate Appellant for several months. The [d]etective testified that a patrol officer at an unrelated incident eventually

arrested Appellant, and Appellant's brother was subsequently charged with hiding Appellant. Det. Sellers testified that he interviewed Appellant regarding these allegations. Appellant denied any inappropriate touching.

Trial Court Opinion (TCO), 7/11/2018, at 2-4 (internal citations, footnote, and headings omitted).

As mentioned by the trial court, Appellant filed a timely notice of appeal, and complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).[1]

Presently, Appellant raises the following issues for our review:

1. Was the jury verdict against the weight of the evidence because of inconsistent factual testimony of the child-victim?

2. Was the verdict against the weight of the evidence due to inconsistent testimony by the child[-]victim and her sister as to when [her] sister found out about the purported assault?

3. Was the evidence insufficient as a matter of law due to lack of physical evidence of any assault?

4. Did the trial court err in denying Appellant's motion in limine to exclude mention that he possessed a firearm as it was

_____

[1] We note that, on March 15, 2018, the trial court ordered Appellant to file a Rule 1925(b) concise statement within 21 days, or by April 5, 2018. On April 6, 2018, Appellant filed a motion requesting an extension of time to file his Rule 1925(b) concise statement because he had been appointed new counsel who had not been able to review the transcripts or confer with his trial counsel. The trial court granted an extension. Then, after once again being appointed new counsel and seeking another extension, Appellant filed his Rule 1925(b) concise statement on May 3, 2018. The trial court subsequently issued a Rule 1925(a) opinion. See Commonwealth v. Burton, 973 A.2d 428, 433 (Pa. Super. 2009) ("[I]f there has been an untimely filing, this Court may decide the appeal on the merits if the trial court had adequate opportunity to prepare an opinion addressing the issues being raised on appeal.").

not relevant to the charges at trial and the evidence on record showed it was pointed in self[-]defense?

5. Did the trial court err in allowing a jury charge for fleeing and eluding-consciousness of guilt, when the Commonwealth failed to establish Appellant knew he was wanted by police?

Appellant's Brief at 3 (unnecessary capitalization omitted).

We address Appellant's issues out of order for ease of disposition. In his third issue, Appellant argues that the evidence was insufficient as a matter of law due to the lack of any physical evidence of an assault. See id. at 17. Appellant states:

There is no physical evidence. There are no witnesses. [S.R.'s] home[ ]life was horrible and her mother had a severe alcohol problem and the victim testified she sometimes hated her. Her account was not confirmed by her own sisters, who were there on her behalf and therefore the discrepancies are even more credible. One of the three times she testified the assault occurred had a large variation as to how it occurred and who was there. Appellant denied the assaults to the police. Based on the facts as developed at trial, the evidence was insufficient as a matter of law to convict Appellant beyond a reasonable doubt.

Id. at 21-22 (footnote omitted).

We apply the following standard of review:

When reviewing a sufficiency of the evidence claim, an appellate court must view all the evidence and reasonable inferences therefrom in a light most favorable to the Commonwealth as the verdict winner and must determine whether the evidence was such as to enable a fact[-]finder to find that all of the elements of the offense[] were established beyond a reasonable doubt.

In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.

> Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, a mere conflict in testimony does not render the evidence insufficient. The trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Castelhun, 889 A.2d 1228, 1232 (Pa. Super. 2005)

(internal citations and quotation marks omitted).

Here, the jury convicted Appellant of the following offenses:

> (a) Offense defined.--A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:
>
> > (8) the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.

18 Pa.C.S. § 3126(a)(8).[2]

> (a) Offense defined.--A person commits an offense if he is intentionally in contact with a minor, or a law enforcement officer acting in the performance of his duties who has assumed the identity of a minor, for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth:

---

[2] Indecent contact is defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S. § 3101.

- 5 -

> (1) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses).

18 Pa.C.S. § 6318(a)(1).

As this Court has explained, "it is well-established that the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses." Castelhun, 889 A.2d at 1232 (citations and quotation marks omitted). At the time of the incidents, S.R. was thirteen years old, and Appellant was approximately thirty-seven years old. See N.T. Trial, 11/7/2018-11/8/2018, at 53, 143. S.R. testified that the first incident occurred when she was washing dishes alone in the kitchen, and Appellant "grabbed" and "squeezed" her butt. Id. at 63. He then asked if she felt uncomfortable, and S.R. indicated that she did. Id. He then told her to keep it a secret. Id. at 64. Two days after that incident, while S.R. was pouring drinks alone in the kitchen, Appellant began massaging her shoulders and then touched her vagina over her clothes with his whole hand. Id. at 68-69. Thereafter, with respect to the final incident, S.R. testified that she was upstairs in the house with a group of people when Appellant told the group to go outside. Id. at 71. S.R. said she had to get her younger brother's coat and shoes, and when she was alone and about to go downstairs, Appellant "grabbed" her butt. Id. After doing so, Appellant again asked S.R. if that made her feel uncomfortable. Id. at 73. We deem this evidence sufficient to establish the above-stated offenses. Accordingly, we reject Appellant's sufficiency claim.

We next examine Appellant's first and second issues together, as they both challenge the weight of the evidence. He contests the weight of the evidence because of "inconsistent factual testimony of the child-victim[,]" and "inconsistent testimony by the child[-]victim and her sister as to when [her] sister found out about the purported assault." Appellant's Brief at 3 (unnecessary capitalization omitted). In detail, Appellant argues:

> In this case, the contradictions brought out in cross-examination of the victim, as well as the cross examination [of] other witnesses, called into question the credibility of [S.R]. The contradictions were not just getting a date wrong or the timing of the assaults wrong, the inconsistencies were substantial. First, [S.R.] stated she was alone with … Appellant when one of the assaults allegedly occurred. However, she later said her brothers were there. [S.R.] also testified [that] she told her [younger] sister[, R.M.,] about the abuse and asked her not to tell anyone because their mother would not believe her. However, [R.M.] testified and stated [that S.R.] told "[our older sister, M.F.,] the same day she told me" which was May 6, 2016, when the police were called. Sisters [R.M. and M.F.] both confirmed they found out the same night and [M.F.] confronted her mother.

Id. at 15 (internal citations omitted).

When reviewing weight claims, we keep in mind that,

> [a]s a general rule, the weight of the evidence is exclusively for the fact[-]finder who is free to believe all, part or none of the evidence and to determine the credibility of the witnesses. We cannot substitute our judgment for that of the finder of fact. We may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, our role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion.

Castelhun, 889 A.2d at 1234 (internal citations and quotation marks omitted).

The trial court in the case sub judice denied Appellant's weight claims. It reasoned:

> The trier of fact, while passing upon the credibility of witnesses and the weight to be afforded the evidence produced, is free to believe all, part or none of the evidence. The jury reasonably found credible the testimony of the victim, S.R. She testified in detail at trial about three specific instances of criminal contact at her house. S.R.'s sisters corroborated her testimony. Upon further review of the evidence, this [c]ourt's sense of justice is not shocked by the jury's verdict in this case, as it was not against the weight of the evidence but rather supported by it.

TCO at 5 (internal citation omitted).

We see no abuse of discretion by the trial court. The two inconsistences pointed out by Appellant above are not shocking. First, with respect to discrepancies in S.R.'s testimony regarding if her brothers were present during the third incident, she testified at trial that there were numerous people upstairs at the time Appellant told them to go outside. See N.T. Trial at 70-71. Because S.R. had to gather her brother's coat and shoes, she said she encountered Appellant alone as she tried to make her way downstairs to go outside, at which point Appellant grabbed her butt. Id. at 71-72. However, Appellant argues that Detective Sellers testified that S.R. reported to him that this incident occurred on the second floor of the residence, as "she was watching her brothers wrestle...." Id. at 138. We do not view this discrepancy as a substantial inconsistency. As the Commonwealth observes, "S.R. was clear that there were many children upstairs when [A]ppellant ordered them all outside." Commonwealth's Brief at 14. Moreover, the Commonwealth notes that Appellant "never confronted S.R. with this alleged inconsistency,

- 8 -

and thus never gave her [an] opportunity to explain whether she had given this information to the detective or whether his memory was faulty." Id.

Second, with respect to S.R.'s telling her sisters about the encounters, S.R. testified that she told R.M. about the touching after the second incident and told her not to say anything about it because she did not know how their mother would react. N.T. Trial at 70, 73. S.R. then explained that she told her other sister, M.F., about the touching after the third incident, when they were walking a friend home. Id. at 74. When R.M. testified, she stated that S.R. initially told her about Appellant's touching quietly when they were upstairs in the house and M.F. was not present. See id. at 99, 104. R.M. said she did not tell anyone else, but noted that S.R. told M.F. about it when they all went to walk a friend home later that day. Id. at 101, 105. M.F. corroborated that S.R. told her about the touching on the sidewalk, when they were on their way home from dropping a friend off at her house. Id. at 108. While R.M. and S.R.'s testimony differs as to whether S.R. told R.M. about the touching after the second or third incident, we also do not deem this inconsistency as significant.[3] For the most part, S.R.'s sisters corroborated her testimony, confirming that S.R. told them that Appellant inappropriately touched her, and giving similar details about where she did so. See N.T. Trial

_____

[3] The Commonwealth also argues that "Appellant's assertion that the sisters of S.R. did not confirm that she told them not to tell anyone does[ not] prove anything, since [A]ppellant's counsel never asked the sisters whether S.R. requested that they keep the information to themselves and not disclose it." Commonwealth's Brief at 16 (citation omitted).

at 100, 108. Thus, we conclude the trial court did not abuse its discretion in denying Appellant's weight claims.

In Appellant's fourth issue, he argues that the trial court erred "in denying [his] motion in limine to exclude mention that he possessed a firearm as it was not relevant to the charges at trial and the evidence on record showed it was pointed in self[-]defense." Appellant's Brief at 22 (unnecessary capitalization omitted). Specifically, he argues that he "properly filed a [m]otion in [l]imine to exclude all mention of a firearm being present. This [m]otion was denied by the [t]rial [c]ourt, holding the gun would be relevant, but only if it was shown that … Appellant showed a gun 'in an effort to intimidate any victim or witness' … [o]r if Appellant threatened the victim to others about the disclosures." Id. (citations omitted) However, he complains that "[t]here was no evidence submitted [that] Appellant 'threatened' anyone or used a gun to try to get people not to talk. Instead, the evidence shows the gun (if it existed) could have just been used (if at all) in self-defense because Appellant was targeted by an angry neighborhood. There was no evidence [that] Appellant tried to stop anyone from testifying." Id. at 23.

Before delving further into this issue, we note that "[a] motion in limine is a procedure for obtaining a ruling on the admissibility of evidence prior to or during trial, but before the evidence has been offered." Commonwealth v. Bobin, 916 A.2d 1164, 1166 (Pa. Super. 2007) (citation omitted). "Consequently, our review of the court's disposition is governed by an abuse of discretion standard." Id. (citation omitted).

Here, the trial court explained,

> Appellant alleges that this [c]ourt erred in denying a [m]otion in [l]imine to exclude any testimony that Appellant possessed a firearm. In ruling on the [m]otion in [l]imine, this [c]ourt found that the Commonwealth could not reference that Appellant is a person not permitted to possess a gun or that Appellant was originally charged with possessing a firearm. However, this [c]ourt did indicate that evidence that Appellant possessed a firearm would be admissible if relevant. For instance, if Appellant brandished a gun to intimidate a victim or witness, that would be admissible. "This Court has long recognized that any attempt by a defendant to interfere with a witness's testimony is admissible to show a defendant's consciousness of guilt." Commonwealth v. Raga, ... 933 A.2d 997, 1009 (Pa. 2007).
>
> S.R. subsequently testified that she observed Appellant pull out a gun after being confronted by her mother with the allegation that he sexually abused S.R. A trier of fact could reasonably conclude that Appellant's action in brandishing the weapon was intended to prevent the family and friends who were confronting Appellant from pursuing the disclosure or reporting it to the police. As such, the testimony was relevant.

TCO at 7 (internal citations omitted; emphasis added).

At the outset, we deem Appellant's argument waived. Both the trial court and Appellant acknowledge that it denied the motion in limine on the basis that evidence that Appellant possessed a firearm would be admissible if relevant, i.e., if evidence was adduced that Appellant used the firearm to intimidate people from reporting or pursuing the abuse allegations. The trial court made this clear when it denied the motion before trial:

> [The court is] not saying that [the Commonwealth] can get testimony about the gun in necessarily. It really depends on what the victim testifies to. If the victim testifies that she was threatened or saw him threatening other people about those disclosures, not about something else, but about those disclosures that she made, then it likely comes in.

- 11 -

N.T. Trial at 13.

The crux of Appellant's argument on appeal is that the Commonwealth did not elicit sufficient evidence of intimidation at trial and that the evidence instead showed he pointed the gun in self-defense. Therefore, Appellant claims the evidence of the gun should not have been allowed. However, as the trial unfolded, our review of the transcript indicates that Appellant never raised an objection to witnesses' testifying about the gun nor did he seek any instruction because of a lack of relevancy. See also Commonwealth's Brief at 28-29 (noting that Appellant "did not attempt to argue that he pulled the gun in self-defense rather than in an effort to stop the discussion about his alleged assaults, and did not request any instruction from the trial court") (citation omitted). Appellant also does not contend that he did so. Accordingly, we deem this issue waived.[4]

Nevertheless, even if not waived, we agree with the trial court that there was sufficient evidence presented to render the testimony about the gun relevant. S.R. testified that, after her mother found out and confronted Appellant, a large argument ensued that gradually involved more people confronting Appellant. See N.T. Trial at 75-76. S.R. explained that, as she

_____

[4] We acknowledge that "[o]nce the court rules definitively on the record--either before or at trial--a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Pa.R.E. 103(b) (emphasis added). Here, although the trial court denied Appellant's motion in limine, it did not rule definitively; instead, it indicated that the admission of evidence regarding Appellant's possessing the gun would depend on the testimony subsequently offered.

was upstairs looking out a window, she "could see everyone out there. They were separated. My mom was with [Appellant] and Jaden was with his mom and his sister. And then Jaden was standing in front of [Appellant] because they were about to fight and [Appellant] pulled out a gun and pointed it at Jaden and G-Ma stepped up and got in front of him." Id. at 78.[5] Further, M.F. provided the following testimony about the ensuing argument:

> [The Commonwealth:] And did this escalate to a higher point than any argument you witnessed before?
>
> [M.F.:] Yes.
>
> [The Commonwealth:] And what was that?
>
> [M.F.:] In [the] respect that it was never this situation before. I [have] always seen arguments between my mother and her multiple boyfriends. It ha[s] escalated to the point where there have been guns out. But this time, it was different because the gun was out, but I wasn't sure who [Appellant] was pointing it to. And I heard a lot of chaos and the dread of not knowing what was going to happen next. And that fact that it seemed like my mother wasn't believing my sister at the time. It upset me a lot.
>
> [The Commonwealth:] And you saw [Appellant] with the firearm?
>
> [M.F.:] I didn't see him. I heard him. When I had come back downstairs to see what was happening, I saw him arguing with … G-Ma.
>
> [The Commonwealth:] So, how long did this whole argument last for?

_____

[5] S.R. described G-Ma as "my mom's ex-boyfriend's [Jaden] mom. She was staying with us until she had gotten her [own] house. She didn't want to stay there. But she told us many times she stayed for us. And she was actually other than Aunt Christie and grandma, she was the only one that made sure there was food on the table. Buy us clothes. And making sure we had what we needed." N.T. Trial at 56. M.F. also testified that G-Ma "would help feed us. She would make sure that we had clothes. She would go out and buy us things. She would just help us." Id. at 118.

[M.F.:] It lasted until the cops got there.

Id. at 111-12. Based on the above-stated evidence, we would determine that there was evidence presented that would allow a jury to infer that Appellant used the gun to intimidate people from reporting or pursuing the allegations. Accordingly, no relief is due.

Finally, in Appellant's fifth issue, he avers that the trial court erred in "allowing a jury charge for fleeing and [eluding]-consciousness of guilt, when the Commonwealth failed to establish Appellant knew he was wanted by police[.]" Appellant's Brief at 24 (unnecessary capitalization omitted). He asserts that "[t]here was never any evidence presented by the Commonwealth that Appellant left the scene or eluded capture because he was running from the police knowing he was guilty. In fact, he willingly went back to the house later that night, willingly spoke to police, willingly spoke to police again a few weeks later, and did not even know he was charged with a crime at that time as he was not charged after giving a voluntary statement to the police." Id. at 25.

This Court has stated:

[W]e are mindful that the trial court has broad discretion in phrasing its instructions as long as it presents the law to the jury clearly, adequately, and accurately. A flight instruction is proper when:

a person has reason to know he is wanted in connection with a crime, and proceeds to flee or conceal himself from the law enforcement authorities, such evasive conduct is evidence of guilt and may form a basis, in connection with other proof, from which guilt may be inferred.

A defendant's knowledge may be inferred from the circumstances attendant [to] his flight.

Commonwealth v. Thoeun Tha, 64 A.3d 704, 714 (Pa. Super. 2013) (internal citations and quotation marks omitted).

In giving the instruction, the trial court reasoned that, "The testimony adduced at trial indicated that Appellant left the scene prior to the arrival of the police. In fact, the victim in this case testified that Appellant 'ran.' As such, the evidence supported the charge...." TCO at 7-8; see also N.T. Trial at 78-79 ("The Commonwealth: Do you know what [Appellant] did whenever the police came? S.R.: He ran.").[6] We agree. We further observe that, at that point, Appellant knew of the allegations against him. Thus, we discern no abuse of discretion. Based on the foregoing, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

_____

[6] Detective Sellers testified:

The police had responded twice that night, according to the reports. And [Appellant] had told me when I had interviewed him that although he had no interaction or involvement with what was going on, [S.R.'s mother] told him to leave the house or leave the area, which he did. He claimed that he didn't see the police. Although the police were out searching the area. But when he did come back a short time later, the police were called back and they spoke with him.

N.T. at 132.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: _3/4/2019_